UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANIA T. MARKER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>　　　　　Defendant. | Case No.  23-cv-05873-JSC<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 44, 45 |

Tania T. Marker, proceeding without attorney representation, sues the U.S. Department of Education ("DOE") for failing to conduct an adequate search for records responsive to her Freedom of Information Act ("FOIA") request.  (Dkt. No. 7.)  Now pending before the Court are the parties' cross-motions for summary judgment.  (Dkt. Nos. 44, 45.)  Having carefully considered the parties' submissions, and with the benefit of oral argument on January 14, 2026, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for summary judgment.  Through its declarations, DOE has shown it performed an adequate search for records responsive to Plaintiff's FOIA request, and the additional records Plaintiff seeks are beyond its control.  Because Plaintiff does not present a genuine dispute as to any material fact, DOE is entitled to summary judgment as a matter of law.

## BACKGROUND

### I.    AMENDED COMPLAINT ALLEGATIONS

On February 4, 2022, Congressman Mark DeSaulnier's office sent DOE a FOIA request on Plaintiff's behalf seeking:

> [A]ll records related to [Plaintiff's] federal or federal guaranteed student loans including but not limited to:
> [1] Information related to all FFEL and Direct Loans, Applications

and payment histories
[2] All FAFSA's completed in [Plaintiff's] name
[3] Records of all consolidations
[4] Records of any Ombudsman disputes and their outcomes.

(Dkt. No. 44-2 at 2; Dkt. No. 7 ¶ 17.) Because she had not received a response, Plaintiff emailed DOE on August 12, 2022 to appeal her request. (Dkt. No. 7 ¶ 18.) DOE informed Plaintiff because Congressman DeSaulnier's office had made the request, DOE had sent its final response to the Congressman's office and would not enter an appeal. (*Id.*) DOE agreed to mail Plaintiff its final response, and Plaintiff received and accessed it. (*Id.*) Plaintiff then appealed DOE's response. (*Id.* ¶ 19.) On January 24, 2023, DOE granted Plaintiff's appeal and produced an additional 391 pages of records. (*Id.*; Dkt. No. 12 ¶ 19.) However, Plaintiff believed the additional records "failed to meet all of [her] request" and DOE had not explained what it withheld, considered exempt, or otherwise did not produce. (Dkt. No. 7 ¶ 19.)

## II.    PROCEDURAL HISTORY

On November 14, 2023, Plaintiff sued DOE and DOE Secretary Migel Cardona. (Dkt. No. 1.) Following the Court's 28 U.S.C. § 1915 screening order, Plaintiff filed an amended complaint against DOE under FOIA, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. (Dkt. Nos. 5, 7.) The Court screened Plaintiff's amended complaint and allowed service, and DOE answered the amended complaint. (Dkt. Nos. 8, 12.) Following the parties' negotiations, DOE released an additional 1,833 pages of records to Plaintiff. (Dkt. No. 19 at 2.) DOE also reached out to the two servicers holding Plaintiff's federal loans and produced one additional record to Plaintiff. (Dkt. No. 21 at 2.) However, Plaintiff stated she still sought evidence of payments made in 2008 to a "previous servicer subject to a Consumer Financial Protection Bureau order and Department of Justice settlement," named either Conduent or ACS. (*Id.*) DOE now moves for summary judgment in its favor. (Dkt. No. 44.) Plaintiff opposes DOE's motion and cross-moves for summary judgment in her favor. (Dkt. No. 45.)

## III.    DOE'S EVIDENCE

DOE has submitted two declarations from its FOIA Team Lead LaToya Tribue explaining its searches for records responsive to Plaintiff's FOIA request. (Dkt. No. 33-1 ¶¶ 1-2; Dkt. No. 46-1 ¶¶ 1-2.) According to Ms. Tribue, DOE's FOIA Service Center determined the Federal

United States District Court
Northern District of California

United States District Court
Northern District of California

Student Aid ("FSA") office was "reasonably likely to have responsive records." (Dkt. No. 33-1 ¶¶ 5-6.)  FSA then coordinated three searches through Student Experience and Aid Delivery ("SEAD"), which "contracts with vendors who manage and oversee the borrower loan level information," and one search through FSA's Ombudsman Office, which "handles complaints and/or issues from borrowers related to Title IV federal student aid or one of the servicers FSA provides." (*Id.* ¶¶ 8, 10, 14.)

First, SEAD used Plaintiff's Social Security number to search the National Student Loan Data System ("NSLDS"), "a database that tracks and manages information about federal student loans and grants and is a central database for student aid used by DOE." (*Id.* ¶¶ 8(a)(i), 11.) Using Plaintiff's name or date of birth to search NSLDS would not return additional records because each record in NSLDS contains the borrower's name, date of birth, and Social Security number. (Dkt. No. 46-1 ¶ 4.)  For the same reason, searches for inaccurate spellings of Plaintiff's name would not return responsive records; Ms. Tribue nevertheless attests she did not find additional records using Plaintiff's last name and inaccurate first names "Tanya" and "Tonya." (*Id.* ¶ 6.)  So, all records in the NSLDS database related to Plaintiff have been produced. (*Id.* ¶ 5.)

Second, SEAD used Plaintiff's Social Security number to search the Common Origination and Disbursement ("COD") System, which is "designed to support origination, disbursement, and reporting for Direct Loan, Federal Pell Grant, and the Teacher Education Assistance for College and Higher Education (TEACH) Grant programs." (Dkt. No. 33-1 ¶¶ 8(a)(ii), 12.)  A subsequent COD System search using Plaintiff's name returned the same records, and the COD System does not allow searches by date of birth. (Dkt. No. 46-1 ¶ 7.)  So, all records in the COD System related to Plaintiff have been produced. (*Id.*)

Third, SEAD used Plaintiff's Social Security number and the first two letters of Plaintiff's last name to search the Business Intelligence ("BI") Tool Database, "a web application that is used to capture and maintain student records received from the Student Aid Report (SAR), which is the results of the Free Application for Federal Student Aid (FASFA)." (Dkt. No. 33-1 ¶¶ 8(a)(iii), 13.) The BI Tool Database does not allow searches by date of birth or Plaintiffs' full name. (Dkt. No. 46-1 ¶ 8.)  So, all records in the BI Tool Database related to Plaintiff have been produced. (*Id.*)

3

United States District Court
Northern District of California

Fourth, FSA's Ombudsman Office used Plaintiff's name and Social Security number to search its Salesforce-Based Records System, where it tracks complaints and issues from borrowers. (Dkt. No. 33-1 ¶¶ 8(b), 14.) Because each record includes the borrower's name, date of birth, and Social Security number, a search for Plaintiff's name or date of birth did not return additional records. (Dkt. 46-1 ¶ 9.) So, all records in the Salesforce-Based Records System related to Plaintiff have been produced. (*Id.*)

FSA also asked Aidvantage and Nelnet, Plaintiff's federal loan servicers, who "handle billing and other services" for Plaintiff's loans on DOE's behalf, for additional records related to Plaintiff. (Dkt. No. 33-1 ¶¶ 8(c), 15.) FSA determined Plaintiff from August 1995 to September 2005 had two direct loans serviced by ACS Education Services, a loan servicing company once contracted by DOE. (*Id.* ¶ 16.) FSA maintains ACS Education Services' transactional data records, which "confirm that no payments were made by Plaintiff on the two Direct Loans while it was serviced by ACS Education Services." (*Id.* ¶ 17.) However, in September 2005, these two direct loans were consolidated to a Federal Family Education Loan ("FFEL") loan serviced by commercial servicer Conduent. (*Id.* ¶ 16.) At that point, all files for Plaintiff's loans were "transferred to Conduent and no longer reside[d] with DOE FSA," and FSA "does not maintain, nor have access to, records for Conduent" or "authority over Conduent on how to service its loans." (*Id.*)

DOE maintains additional databases, including the Student Aid Internet Gateway Participation Management System ("SAIG"), the Enterprise Data Management and Analytics Platform Service ("EDMAPS"), and the Financial Management System ("FMS"). (Dkt. No. 46-1 ¶ 11.) However, because these systems do not "contain unique borrower-specific information that would be responsive to Plaintiff's FOIA request," DOE typically does not search these databases when responding to FOIA requests about federal loan records. (*Id.* ¶¶ 11, 15.) Instead of recording borrower-specific information, SAIG allows education institutions to exchange financial aid data with FSA, EDMAPS aggregates records from many individuals to create reports, and FMS summarizes FSA's and other financial partners' financial transaction data. (*Id.* ¶¶ 12-14.)

Ms. Tribue therefore attests FSA "searched all sources within FSA's control that would be

reasonably likely to contain responsive records," "did not omit searching any databases within FSA's control that would reasonably be calculated as having responsive records," and used search terms "reasonably calculated to return all responsive records." (Dkt. 33-1 ¶ 18; Dkt. 46-1 ¶ 16.) FSA processed 2,286 pages of records responsive to Plaintiff's request, and produced all located responsive records to Plaintiff on August 15, 2022; January 24, 2023; May 17, 2024; and July 17, 2024. (Dkt. No. 33-1 ¶¶ 19-20.)

**DISCUSSION**

**I.    LEGAL STANDARD**

**A.    Summary Judgment**

The Federal Rules of Civil Procedure allow for summary judgment when the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

"On cross motions for summary judgment, the burdens faced by opposing parties vary with the burden of proof they will face at trial." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513 (N.D. Cal. 1995). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted). "In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.* If the moving party produces sufficient evidence on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *Id.* (quotation marks and citation omitted). If the opposing party "fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire &*

United States District Court
Northern District of California

5

*Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  On the other hand, when the moving party would not bear the burden at trial, it can meet its summary judgment burden by (1) "produc[ing] evidence negating an essential element of the nonmoving party's case," or (2) "after suitable discovery, . . . show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Id.* at 1106.  "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

### B.   FOIA

"FOIA was enacted to facilitate public access to Government documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quotation marks and citation omitted).  To facilitate public access, FOIA "gives individuals a judicially-enforceable right of access to government agency documents." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004).  FOIA provides "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).

Because "the facts are rarely in dispute," FOIA cases are often decided upon motions for summary judgment.  *See Minier v. Cent. Intel. Agency*, 88 F.3d 796, 800 (9th Cir. 1996).  "Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits describing the documents sought." *Lion Raisins*, 354 F.3d at 1082.  However, if there is evidence of the government agency's bad faith, courts do not give government affidavits the "substantial weight" they ordinarily receive. *See Hunt v. Cent. Intel. Agency*, 981 F.2d 1116, 1119 (9th Cir. 1992) (quotation marks and citation omitted).

### II.   ADEQUACY OF DOE'S SEARCHES

"FOIA requires an agency responding to a request to demonstrate that it has conducted a

search reasonably calculated to uncover all relevant documents." *Lahr*, 569 F.3d at 986 (quotation marks and citation omitted). "In evaluating the adequacy of the search, the issue is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 770-71 (9th Cir. 2015) (quotation marks and citation omitted) (emphasis in original); *see also id.* at 772 (explaining requesters are "entitled to a reasonable search for records, not a perfect one"). "[U]nder FOIA, agencies bear the burden of demonstrating the adequacy of their search beyond a material doubt." *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 780 (9th Cir. 2022). "An agency can demonstrate the adequacy of its search through reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (quotation marks and citation omitted); *see also Hamdan*, 797 F.3d at 770 ("Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith.").

Ms. Tribue's declarations demonstrate DOE conducted a search reasonably calculated to uncover all relevant documents responsive to Plaintiff's FOIA request. First, FSA's searches of NSLDS, the "central database for student aid," and the COD System, which manages reporting for Direct Loan and other programs, were reasonably calculated to uncover records "related to federal or federal guaranteed student loans including . . . information related to all FFEL and Direct Loans, applications and payment histories [and] . . . records of all consolidations." (Dkt. No. 33-1 ¶¶ 8(a)(i)-(ii), 11, 12; Dkt. No. 7 ¶ 17.) Second, FSA's search of the BI Tool Database, which maintains student records received from FAFSA results, was reasonably calculated to uncover requested records of "FAFSA's completed in Plaintiff's name." (Dkt. No. 33-1 ¶ 8(a)(iii), 13; Dkt. No. 7 ¶ 17.) Third, FSA's search of the Ombudsman Office's Salesforce-Based Records System, which tracks complaints from borrowers related to federal student aid or FSA's servicers, was reasonably calculated to uncover requested records "of any Ombudsman disputes and their outcomes." (Dkt. No. 33-1 ¶¶ 8(b), 14; Dkt. No. 7 ¶ 17.) In addition, FSA asked Aidvantage and Nelnet, who "handle billing and other services" for Plaintiff's federal loans, for Plaintiff's records and produced any uncovered records to Plaintiff. (Dkt. No. 33-1 ¶¶ 8(c), 15, 20.) Because Ms. Tribue's declarations "describe what records were searched, by whom, and through what

United States District Court
Northern District of California

7

United States District Court
Northern District of California

processes," DOE has shown its search was reasonably calculated to uncover all relevant documents. *See Laws.' Comm. for C.R. of S.F. Bay Area v. U.S. Dep't of Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (quotation marks and citation omitted). So, DOE has met its burden of showing its search was adequate.

Plaintiff disputes the adequacy of DOE's search because DOE did not "account for how Plaintiff's name was spelled, if it used her first and last name, [] the rationale behind an 'and/or' approach with respect to SSN," "why such alternate search terms as Plaintiff's address, date of birth, or state drivers license were not included in the search methodology, or the number of searches it conducted and the time horizon searched." (Dkt. No. 45 at 9.) Ms. Tribue's supplemental declaration answers these questions. First, Ms. Tribue explains searching NSLDS using Plaintiff's name, incorrectly spelled name, or date of birth, instead of Plaintiff's Social Security number, would not return additional records because each record contains the borrower's name, date of birth, and Social Security number. (Dkt. No. 46-1 ¶¶ 4, 6.) She also attests searches using Plaintiff's last name and inaccurate first names "Tanya" and "Tonya" did not return additional records. (*Id.* ¶ 6.) Second, Ms. Tribue attests searching the COD System using Plaintiff's name returned the same records as using Plaintiff's Social Security number, and the COD System does not allow searches by date of birth. (*Id.* ¶ 7.) Third, Ms. Tribue explains the BI Tool Database does not allow searches by date of birth, and searches based on Plaintiff's full name would not produce additional records because each record includes the borrower's name and Social Security number. (*Id.* ¶ 8.) Fourth, Ms. Tribue attests the Ombudsman Office's search for Plaintiff's name or date of birth did not return additional records because each record includes the borrower's name, date of birth, and Social Security number. (*Id.* ¶ 9.) Ms. Tribue also clarifies DOE did not include a date limit on any searches, and the borrower's address and driver's license numbers were not search field options in the searched databases. (*Id.* ¶ 10; Dkt. No. 33-1 ¶ 9.) In addition, that DOE's searches resulted in 2,286 pages of responsive records produced to Plaintiff supports the conclusion DOE "used a search method sufficient to produce the information [Plaintiff] requested." (*Id.* ¶¶ 19-20.) *See Abhyanker v. U.S. Pat, & Trademark Off.*, No. 23-CV-00746-AMO, 2024 WL 3908107, at *6 (N.D. Cal. Aug. 19, 2024) (rejecting challenges to search

United States District Court
Northern District of California

terms because agency produced responsive records).  So, DOE has shown its search terms were reasonably calculated to uncover all relevant documents.

Plaintiff also argues DOE did not search several Federal Student Aid systems listed in the Federal Register, including SAIG, EDMAPS, and FMS.  (Dkt. No. 45 at 9.)  However, Ms. Tribue explains those databases "do not typically contain unique records associated with specific, indefinable borrowers that are not already available within the other databases the agency routinely searches" and so would not include "unique borrower-specific information that would be responsive to Plaintiff's FOIA Request."  (Dkt. No. 46-1 ¶¶ 11, 15.)  Specifically, SAIG allows education institutions to exchange financial aid data with FSA, EDMAPS aggregates records from many individuals to create reports, and FMS summarizes FSA's and financial partners' financial transaction data.  (*Id.* ¶¶ 12-14.)  Because DOE has demonstrated these databases are not "places in which [Plaintiff's requested records] might be expected to be found," DOE performed an adequate search without searching within them.  *See Transgender L. Ctr.*, 46 F.4th at 781 (quotation marks and citation omitted).  In addition, Ms. Tribue's attestation FSA "searched all sources within FSA's control that would be reasonably likely to contain responsive records" and "did not omit searching any databases within FSA's control that would reasonably be calculated as having responsive records" is "presumed to be in good faith."  (Dkt. 33-1 ¶ 18.)  *See Hamdan*, 797 F.3d at 770.

Given DOE's declarations, Plaintiff's arguments about DOE's searches, search terms, and searched databases fail to raise a genuine dispute of material fact about the adequacy of DOE's search.  So, DOE has met its burden of demonstrating its search for records responsive to Plaintiff's FOIA request was adequate.

### III.    DOE'S CONTROL OVER ADDITIONAL RECORDS

An agency only has an obligation to produce records if the agency is "in control of the requested materials at the time the FOIA request is made."  *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 145 (1989).  Because control focuses on an agency's possession of the requested materials, an agency is not obligated to produce documents not in its possession.  *See Rojas v. Fed. Aviation Agency*, 989 F.3d 666, 677 (9th Cir. 2021) (en banc).  An agency also is not

"required to retrieve documents which have escaped its possession, but which it has not endeavored to recover." *Tax Analysts*, 492 U.S. at 148 n.10 (quotation marks and citation omitted). "However, the burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not currently" in the agency's possession. *See Ctr. for Investigative Reporting v. U.S. Dep't of Just.*, 14 F.4th 916, 937 (9th Cir. 2021) (cleaned up).

Plaintiff argues DOE's search was inadequate because it did not locate records related to payments made to a servicer named ACS or Conduent in 2008. However, DOE has demonstrated it does not possess these records. According to Ms. Tribue's declaration, Plaintiff held two direct loans which ACS Education Services serviced from August 1995 through September 2005. (Dkt. No. 33-1 ¶ 16.) In September 2005, however, these two loans were consolidated to a FFEL loan serviced by Conduent, a commercial servicer, and "[a]ll files regarding Plaintiff's FFEL loan were transferred to Conduent" and "no longer reside[d] with DOE FSA." (*Id.*) Furthermore, "DOE FSA does not maintain, nor have access to, records for Conduent," or "have authority over Conduent on how to service its loans." (*Id.*) So, DOE does not possess or control any records of payments Plaintiff made to Conduent in 2008.

Because the unlocated records requested by Plaintiff are not within DOE's control, DOE does not have an obligation to produce them in order to adequately respond to Plaintiff's FOIA request.

## IV.   PLAINTIFF'S REMAINING REQUESTS

Plaintiff also asks DOE to "provide[] lawful justification to what it has withheld." (Dkt. No. 45 at 9.) In response, Ms. Tribue attests "all responsive records located through the searches described above have been produced to Plaintiff." (Dkt. No. 33-1 ¶ 20.) Because Plaintiff does present evidence of bad faith or any "contrary evidence in the record," the Court takes Ms. Tribue's attestation DOE is not withholding any located, responsive documents at "face value." *See Ecological Rts. Found. v. U.S. Env't Prot. Agency*, No. 22-15936, 2023 WL 4342100, at *1 (9th Cir. July 5, 2023) (quoting *Hamdan*, 797 F.3d at 769, 779 (quoting *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992))).

Plaintiff also seeks "answers" including "authenticated rates on valid promissory notes,"

"payment records correlated to valid applications which also authenticate consolidations," and "what agency employee approved an unlawfully issued Direct loan." (Dkt. No. 47 at 5.) Plaintiff also seeks "a way to inform of any prospective rights as it relates to evidence of a legal obligation to repay funds." (*Id.* at 6.) However, because FOIA only requires federal agencies to "make records available upon a request which 'reasonably describes' the records sought," DOE is not required to respond to requests for records not included in Plaintiff's February 4, 2022 FOIA request. *See Am. Small Bus. League v. U.S. Off. of Mgmt. & Budget*, 631 F. Supp. 3d 804, 820 (N.D. Cal. 2022) (citation omitted) (explaining requesting party could not change interpretation and scope of FOIA request while in litigation). Furthermore, to the extent Plaintiff asks DOE to answer questions, as opposed to produce records, FOIA does not require DOE to do so. *See Yagman v. Pompeo*, 868 F.3d 1075, 1080-81 (9th Cir. 2017).

## CONCLUSION

Because on the record before the Court DOE has shown as a matter of undisputed fact it conducted an adequate search for records responsive to Plaintiff's FOIA request and the unproduced records are not in DOE's possession, the Court GRANTS the United States' motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

This Order disposes of Docket Nos. 44 and 45.

**IT IS SO ORDERED.**

Dated: January 20, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

11